CATHERINE KENT AND EDWARD KENT, HER HUSBAND, PLAINTIFFS-APPELLANTS, v. HAMILTON TOWNSHIP, A MUNICIPAL CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1963—Decided January 17, 1964.

Before Judges GAULKIN, FOLEY and LEWIS.

*Mr. Leonard J. Felzenberg* argued the cause for plaintiffs (*Messrs. Roskein, Kronisch, Felzenberg & Mandell*, attorneys).

*Mr. Richard J. S. Barlow, Jr.,* argued the cause for respondent (*Messrs. Lenox, Giordano & Lenox,* attorneys).

The opinion of the court was delivered by

LEWIS, J. A. D.   The Superior Court, Law Division, granted summary judgment in favor of the defendant Hamilton Township and against plaintiffs Catherine Kent and her husband Edward Kent who sued *per quod.* The claim for damages was predicated upon an allegation of negligence and the contention that the township, having rented part of its municipal building, was engaged in a proprietary activity. Defendant pleaded statutory immunity under *R. S.* 40:9-2, and the trial court ruled that the township was insulated by that statute from liability and was entitled to judgment as a matter of law.   Plaintiffs appeal.

An agreed statement in lieu of record (*R. R.* 1:6-2) recites the facts which may be summarized: Hamilton Township, a municipal corporation, owned and possessed a two-story building in which were located facilities for the exclusive use of the township's police department and the municipal court. Occasionally, however, the building was made available as an election polling place.

On November 3, 1959 the courtroom was used by the election board of Mercer County for the purpose of conducting an election.   The arrangements between the two governmental agencies, county and township, were verbal and contemplated the availability of the aforesaid room as a polling place during the normal voting hours of that day.   For its use the county paid the township the sum of $15.   Plaintiff Catherine Kent, on the occasion of that election, was employed by the county as a member of the election board.   While in the performance of her duties, she sustained an injury when she fell on the waxed floor of the premises.

*R. S.* 40:9-2 provides:

"No municipality or county shall be liable for injury to the person from the use of any public grounds, buildings or structures, any law to the contrary notwithstanding."

Research does not bring to light any reported decision in New Jersey holding that a municipality providing election accommodations to a county is thereby engaged in a proprietary rather than a governmental function. It has been said that "the dichotomy as a criterion for determining whether a recovery should be allowed is extremely difficult to apply and even more difficult to defend." See *Comment*, 12 *Rutgers L. Rev.* 526, 527 (1958); 18 *McQuillin, Municipal Corporations* (*3d ed. rev.* 1963), § 53.29, *pp.* 190–191. For a history of the doctrine of sovereign immunity see Jaffe, "Suits Against Governments and Officers: Sovereign Immunity," (*pts.* 1–2), 77 *Harv. L. Rev.* 1, 209 (1963).

The distinction between governmental and proprietary functions is not always easy to decipher. *Stringfield v. City of Hackensack,* 68 *N. J. Super.* 38, 43–44 (*App. Div.* 1961), certification denied 36 *N. J.* 133 (1961); *Weeks v. Newark,* 62 *N. J. Super.* 166 (*App. Div.* 1960), affirmed o. b. 34 *N. J.* 250 (1961); *Cloyes v. Delaware Tp.,* 41 *N. J. Super.* 27, 36 (*App. Div.* 1956), affirmed 23 *N. J.* 324, 327–332 (1957); "Municipal Liability in Proprietary and Governmental Functions," 7 *J. Pub. L.* 503 (1958); Weintraub and Conford, "Tort Liability of Municipalities in New Jersey," 3 *Mercer Beasley L. Rev.* 142 (1934). As the scope of "governmentality" enlarges, it becomes increasingly perplexing to draw any definitive line of separation.

However, we do not perceive from the facts in the instant case any doubt that the township acted in its governmental capacity in renting the courtroom of its municipal building for the purpose of a public election. The case of *Schwartz v. Stockton,* 32 *N. J.* 141 (1960), is significantly analogous. There the borough leased a portion of its municipal hall to the local volunteer fire company to garage its apparatus. An accident occurred while the demised area of the premises was being used by a private social service agency, after a flood, for the distribution of clothing. In sustaining an involuntary dismissal at the end of plaintiffs' case, the Supreme Court stated that the municipal immunity "was not divested by

reason of the nature of the temporary use of the garage portion at the time of the accident." *Id.*, at *p.* 150.

Public elections are the heartbeat of democracy. They are inextricably governmental in character and our election laws contemplate the use of public buildings whenever possible. *N. J. S. A.* 19:8–2 provides, *inter alia*:

"Preference in locations shall be given to schools and public buildings where space shall be made available by the authorities in charge, upon request, if same can be done without detrimental interruption of school or the usual public services thereof, and for which the authority in charge shall be reimbursed, by agreement, for expenses of light, janitorial and other attending services arising from such use."

The $15 rental paid to the Township of Hamilton, for all practical purposes, was mere reimbursement of costs; it in no way represented compensation incident to a nongovernmental enterprise. Note, *Schwartz v. Stockton, supra,* 32 *N. J.,* at *p.* 153.

The foreign authorities relied upon by appellants are factually distinguishable, and they do not involve the statutory language which directs the course of our decision. See generally Annotation, "Municipal liability for injury to voter in consequence of condition of polling place," 164 *A. L. R.* 472 (1946).

The judgment of the trial court is affirmed.